series 2012 Mr. Perry, when you are ready, you can proceed. I hope we are correct in our view that there is a very narrow question before us today. I'm sorry, Your Honor. I assume the question before us is quite narrow. Is that correct? The question in the Paddock case, Your Honor, may it please the Court, is quite narrow. Okay. It is the collateral estoppel effect of the judgment. We agree that the Carrico judgment should be given collateral estoppel effect. Our point, our principal point is that the cart should stay behind the horse. So if we decide the Carrico case first, there's nothing to argue about here. That's correct. Yes, with an asterisk, Your Honor. We also have made the point that the inequitable conduct judgment in the second case, and this goes to your question that I tried to answer the last time Judge Brost, Carrico may not care about it given the outcome of the obviousness question, which is now in y'all's hands. Novo, however, very much cares about it. Novo stands as a company. Dr. Sturas stands as an individual scientist accused of misconduct unfairly, unjustly, and it is having collateral consequences, including antitrust actions and so forth, one of the problems with inequitable conduct cases. So we think the inequitable conduct determination needs to be revisited and vacated regardless of the outcome of the obviousness determination. And in this respect, the Paddock case is a little bit different than the Carrico case. The Carrico case was decided before Theracense. We have argued that the Court clearly, legally, and factually erred in applying the pre-Theracense standards. But I gather that inequitable conduct was not argued, that none of the merits of any of the issues of the complaint or defenses were reached in this case. That's not quite right, Judge Newman. We submitted, after Theracense came out, we submitted a supplemental letter to the Minnesota Court arguing that the collateral estoppel of the Michigan judgment, the first judgment, the Carrico judgment, could not have collateral estoppel effect on the inequitable conduct ruling because Theracense was a material change in the law, of course one of the exceptions to the collateral estoppel doctrine, and therefore the Minnesota Court should not follow Carrico for that reason. The Michigan Court then issued a very short order saying, quote, excuse me, the Minnesota Court, the second court, quote, the Michigan Court's conclusions appear to comport with the standards enunciated in Theracense, end quote, and on that basis gave a collateral estoppel effect. We separately appeal from that determination. That is clearly wrong. The first judgment did not comport with Theracense in any number of ways, and for that reason, it can't be given collateral estoppel effect even under the general rubric of collateral estoppel. Your Honor, it's most obvious, perhaps, with respect to Dr. Bork. That's just an argument that the first decision was wrong on inequitable conduct. There's no difference. If the first decision was right on inequitable conduct, then it's collateral estoppel. Your Honor, it has to be right under Theracense. Theracense clearly changed the law. I understand your argument, but if we say it's consistent with Theracense, and we affirm on inequitable conduct, it has collateral estoppel effect. I wouldn't disagree with that. However, it does not comport with Theracense. You're disagreeing on the merits. The only question I believe was whether, in fact, collateral estoppel would apply based on however the first case turns out. In this court, I agree as long as the car stays behind the horse. What we get in the problem, Your Honor, is in Paddock's argument is that they want the judgment affirmed on the basis of collateral estoppel before this court decides the Carrico case. That's behind us. We are still pressing for a decision, and our point is still, as to inequitable conduct, there's no way to render that decision because you have to decide the change in law circumstance. We would argue the same thing, by the way, for obviousness, because it's like labenzaprine. I'm restating the cart before the horse problem. I'm happy to address, of course, the Michigan courts and the Minnesota courts' misapprehensions as to the Theracense doctrine and how they apply here, if the court would like to hear on that. Let's hear from the other side, and we'll see if we can actually simplify as we need to. Thank you, Your Honor. Mr. Brown. Thank you, Your Honor. I'd like to start by addressing a question Judge Dyke asked in the briefing, which is an important issue. I don't know if that question arose in the Paddock case, Judy. No, it was a question regarding why are both Carrico and Paddock in front of this court, given the Supreme Court's decision and this court's decision on the carve-out? What's at stake in the case? Well, all right. We'll hear what you have to say. The issue that we've put through our briefing is what Paddock needs and what we submit the public needs is a decision that will remove the claim Carrico has to first to file exclusivity. They've submitted their ANDA for this product in 2005, and Paddock and several other generic applicants are out there trying to obtain approval. Was there a decision on this point in the district court? No, there was not a decision on this point. You agree that there's a case or controversy with respect to this Paddock, right? Yes, there is. There's absolutely a case or controversy, and part of the reason why for what I'm emphasizing is there's a reason for Paddock why affirmance of the inequitable conduct decision under collateral estoppel is important, and I want to make sure that for us, the answer is different than Mr. Hearst gave for Carrico, and so we have an interest in the affirmance of the inequitable conduct decision, and I just want to make that clear for the record, and that interest is we expect Novo to argue, which it did below, that a decision on just claim four, which the obviousness decision was only on claim four of the patent, is not sufficient to cause a forfeiture of Carrico's exclusivity, and so without affirmance of inequitable conduct, which covers the whole patent, put differently, affirmance of inequitable conduct, which covers the whole patent, for us means, and for the public, means that Carrico has 75 days to start selling its drug, or the forfeiture is gone, and we did argue this throughout our brief as a supporting basis for why we want affirmance of that issue. I would, moving on to simply the timing issue, which I wanted to be clear, we don't have a view as to which case should be decided first. All right, we will decide. We will decide which we want to decide first. And so I would like to proceed and discuss just briefly on the inequitable conduct argument. We don't have a decision of the Minnesota court on this point, so I'm not sure I understand the basis on which you could argue. I only want to argue against Novo's change in law standard. I don't want to argue the merits at all. I just want to argue that this case does not qualify under the change in law standard, principally because Judge Cohn in Michigan was aware of dependency of Theracins. He was aware of the different standards that were at issue. He made specific fact findings under the but-for standard and the single most reasonable inference standard. And we would submit that under the analysis that this court did of collateral estoppel in the Pharmacia v. Milan case, the correct enunciation of those standards and the application of those standards means collateral estoppel applies to that decision. And we would submit for that reason that the change in law standard, while Theracins certainly was a change in law with respect to certain decisions and certain standards that were applied, it does not represent a change in law as to the standard Judge Cohn applied. Therefore, that exception to collateral estoppel, we argue, doesn't apply. Thank you, Mr. Brown. Mr. Perry, Mr. Brown got into some points that we didn't give you a chance to discuss if you feel you want to respond. I think the only point I would make, Your Honors, is to suggest that Theracins is not a change in the law. I don't think that's Mr. Brown's argument. Theracins was a change in the law. The Michigan court did not follow Theracins for all the reasons we've set forth in our brief. The court has indicated its understanding of those arguments. I'm sure you'll take them. I'm happy to answer questions about that. Otherwise, we would encourage the court to reverse the inequitable conduct determination in the Michigan case. It has no collateral estoppel effect in the Minnesota case. And the same too for the obvious determination for all the reasons we have previously explained. Any questions for Mr. Perry? Any more questions? Okay. Thank you, Your Honors. Thank you, Mr. Perry, Mr. Brown. This case is taken into submission. We're going to be over.